## APPEAL OF PITTSBURGH-NORTHERN COAL CO.
## APPEAL OF GIRARD COAL CO.

Docket Nos. 2837, 3724. Promulgated February 10, 1927.

1. On the evidence, corporations *held* to be affiliated.
2. Value of coal land as of March 1, 1913, determined for depletion purposes.

*P. P. Campbell*, Esq., and *H. B. McCawley*, Esq., for the petitioners.

*P. J. Rose*, Esq., for the Commissioner.

### FINDINGS OF FACT.

The Pittsburgh-Northern Coal Co. is a Missouri corporation, incorporated in 1909, with its principal office at Kansas City. Since its organization it has been engaged in mining and selling coal. The authorized capital stock of $75,000 was issued for the fee title to 240 acres of coal land in the Cherokee seam in Crawford County, Kansas, on which a mine had been sunk and development work had reached five or six hundred feet from the shaft, together with complete equipment necessary for the operation of the mine, subject to accounts payable incurred by previous owners in the amount of $67,700 which the petitioner assumed, and also subject to a first mortgage in the amount of $20,000 against the land. The consideration recited in the deed was $100 and other valuable considerations.

Soon after the organization of the company 90 shares of stock were donated by three of the principal stockholders to the corporation, which were sold by it for $9,000 to provide a working capital. This stock was sold to employees of the company and some relatives of the principal stockholders. The coal land acquired by the petitioner is described as follows:

The east half of the northwest quarter; the east half of the southwest quarter; the southwest quarter of the northeast quarter and the northwest quarter of the southeast quarter, except the railroad right of way, all in section 16, township 29, range 25, Crawford County, Kansas, aggregating 240 acres.

After the acquisition of the above land by the petitioner, the petitioner, in July, 1909, leased an adjoining 240 acres of land of the same seam of coal, described as follows:

The northwest quarter of the northeast quarter; the east half of the northeast quarter; the east half of the northeast quarter and the southwest quarter of the southeast quarter; all in section 16, township 29, range 25 east.

These two tracts of land were contiguous and it was impracticable to segregate the coal mined from the petitioner's property and that of the lessor, the coal coming through the same mine and being dumped into the same cars. To meet this condition and to

simplify accounting for royalties, the petitioner and the lessor agreed that the character of the coal, the development, prospecting and production upon the above tracts would be about equal, and instead of paying the lessor 10 cents per ton for coal mined from his land, which was the agreed price, it was agreed that the petitioner would pay 5 cents per ton for all coal mined from both tracts of land, and operations since the acquisition of the above lease have been conducted according to that agreement.

The land to which the petitioner acquired the fee title had been bored and the petitioner had the drilling records which indicated that the vein of coal was about 39 to 40 inches thick and about 185 feet from the surface. There was other development work near this property.

The tonnage on the two tracts was 1,080,000 tons. The average annual production was 80,000 tons, and the life of operations was 14 years.

The petitioner valued the coal land, including the surface, at $60,000 at the time it was acquired for stock, and considered that to be the cost price for the purpose of depletion prior to March 1, 1913, and considered that price, less depletion sustained up to March 1, 1913, as being the value on that date for depletion allowances. The Commissioner determined that the cost of the coal was $20,100 and considered that figure, less depletion sustained, as the March 1, 1913, value.

The coal mined from both the land owned in fee and that acquired by lease up to and including 1918 was as follows:

| Year. | Tons. |
|---|---|
| 1909 | 26,318.85 |
| 1910 | 39,266.10 |
| 1911 | 107,188.50 |
| 1912 | 103,257.20 |
| 1913 | 114,992.75 |
| 1914 | 97,583.10 |
| 1915 | 44,720.70 |
| 1916 | 120,859.90 |
| 1917 | 117,966.00 |
| 1918 | 99,286.00 |
| Total | 871,439.10 |

The tonnage remaining in place on January 1, 1919, was 208,560.9.

The tonnage mined from the two tracts in 1919 was 78,090 tons. The two tracts were considered as one for the purpose of royalty settlements and no distinction was made between coal mined from one or the other. The 240 acres to which the title was acquired by the petitioner contained 540,000 tons and one-half of the coal mined during 1919 was mined from that tract. In determining the coal

mined in the above tabulated statement, one-half is deemed to have been mined from the 240 acres owned in fee by the petitioner.

The March 1, 1913, value of the coal in place on the 240 acres owned in fee was $28,000.

The Girard Coal Co. is a Missouri corporation and the Girard Fuel Co. is a Kansas corporation. These companies, together with the Pittsburgh-Northern Coal Co., were engaged in the same business. They occupied the same offices and had the same active managing officers and accountants. There was frequent interchange of monies without interest. The employees and equipment of the mines were frequently interchanged without charges. The expenses of the offices were arbitrarily divided between the companies according to their ability to pay. Coal was sold under a single contract made by Fleming.

The following is a statement of the stock holdings of the three companies as of January 1, 1919, together with the relationship of the stockholders:

| Stockholder. | Pittsburgh-Northern Coal Co. | | Girard Coal Co. | | Girard Fuel Co. | |
|---|---|---|---|---|---|---|
| | Shares. | Per cent of total | Shares. | Per cent of total | Shares. | Per cent of total |
| 1. I. M. Fleming | 355 | 47⅓ | 325 | 32½ | 215 | 28⅔ |
| 2. Mrs. Maggie Crowe (wife of J. R. Crowe, Sr.) | 110 | 14⅔ | | | | |
| 3. J. R. Crowe, Jr. (son of J. R. Crowe, Sr.) | 110 | 14⅔ | | | | |
| 4. J. R. Crowe, Jr. (in trust for Miss Crowe, daughter of J. R. Crowe, Sr.) | 110 | 14⅔ | | | | |
| 5. Estate of J. R. Crowe, Sr. | | | 575 | 57½ | 190 | 25⅓ |
| 6. Estate of J. R. Crowe, Sr. and I. M. Fleming | | | | | 115 | 15⅓ |
| 7. R. A. Gray (employee of J. R. Crowe, Sr.) | | | 100 | 10 | 80 | 10⅔ |
| 8. H. T. Buchanan | 5 | ⅔ | | | 30 | 4 |
| 9. L. F. Miller (employee of 3 companies) | 10 | 1⅓ | | | 17½ | 2½ |
| 10. Hugh Reid | 20 | 2⅔ | | | | |
| 11. R. R. Hibben | 10 | 1⅓ | | | | |
| 12. Mrs. Julia N. Pye (mother-in-law of I. M. Fleming) | 20 | 2⅔ | | | | |
| 13. Mrs. Willis Wood | | | | | 12½ | 1⅔ |
| 14. Mrs. S. W. Harris (sister of L. F. Miller) | | | | | 30 | 4 |
| 15. A. H. Skidmore | | | | | 60 | 8 |
| Total | 750 | 100 | 1,000 | 100 | 750 | 100 |

I. M. Fleming was president, superintendent and general manager of the Pittsburgh-Northern Coal Co. He was vice president, superintendent and general manager of the Girard Coal Co. and the Girard Fuel Co. He at all times held power of attorney and voted the stock of Reid, Mrs. Pye and Hibben. He frequently voted the stock of Mrs. Willis Wood and Mrs. S. W. Harris. Coal produced by these companies was disposed of through one selling agency operating in connection therewith.

J. R. Crowe, Jr., and Maggie Crowe are the executors of the estate of J. R. Crowe, Sr., and they, together with one daughter, are the beneficiaries under the will.

OPINION.

TRAMMELL: With respect to the depletion allowance for 1919, the question to be determined is what was the fair market value on March 1, 1913, of the property acquired in 1909. Both the respondent and the petitioner considered that the March 1, 1913, value of the land acquired in fee was the cost price thereof less the depletion sustained up to that date. The respondent determined that the cost of this land was $20,100 upon the evidence of the consideration recited in the deed. The deed recited that it was executed in consideration of $100 and other valuable considerations, subject to a mortgage of $20,000 against the land, which was assumed. The land, however, was acquired in connection with a completed plant and mining equipment ready for operation. There were debts against the property which had been incurred by the previous owners to the extent of $67,000, which the petitioner also assumed. The consideration recited in the deed was not the actual consideration paid. The land, together with equipment, machinery and other assets, with the encumbrances against the property was in fact acquired for stock. The petitioner considered that $60,000 of the total purchase price was for the land and that the balance was for equipment, fixtures and other things which made up the completed plant. That amount was placed upon the books of the petitioner as cost of the land.

There is no evidence as to the value of the items of equipment, nor any evidence by which an allocation may be made between the cost of land and other assets.

From all the evidence, it is our opinion that the value on March 1, 1913, of the coal in place on the 240 acres of land owned by the petitioner in fee was $28,000. The depletion allowance for 1919 should be determined on that basis.

The other controversy in this appeal is whether the Pittsburgh-Northern Coal Co. and the Girard Coal Co. were, during the year 1919, affiliated within the provision of section 240 of the Revenue Act of 1918, and entitled to file a consolidated return. These companies were organized and operated by a group of persons who were closely associated in business relations or by family ties. Fleming was the principal directing force in all of them. Fleming, Crowe, Sr., Gray, and Buchanan had been associated in several mining ventures over a period of many years.

The greatest divergency in stock ownership exists in the Crowe estate and members of the Crowe family, two of whom were the

beneficiaries of that estate. The two members of the Crowe family were executors of the estate and as such were in control of the stock owned by the estate. J. R. Crowe, Jr., held in trust for his sister 14⅔ per cent of the stock of the Pittsburgh-Northern Coal Co. and was one of the executors of the estate which owned stock in both the other corporations.

Gray was an employee of the Crowe estate. Miller was an employee of all the corporations. Mrs. Pye was Fleming's mother-in-law. Mrs. Harris was Miller's sister-in-law. Fleming at all times voted the stock of Miller, Reid and Mrs. Pye.

From all the evidence, we are of the opinion that the stock in all three of the companies was owned or controlled by the same interests. The corporations are, therefore, affiliated and are entitled to file a consolidated return for the year involved.

> *Judgment will be entered on 15 days' notice,
> under Rule 50.*